Nadja Yang
200 E Liberty St Lbby Unit 7760
Ann Arbor MI 48107
M: Nadja Yang <nadja@njy.dev>
C: tel:332.203.3124
Debtor and Movant *pro se*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

In re:

NADJA YANG,

*Debtor.*

NADJA YANG,

*Movant,*

v.

REGENTS OF THE UNIVERSITY OF MICHIGAN,

*Respondent.*

Case No. 3:26-cv-07302-WHO

Bankr. No. 26-30507 WJL

The Honorable William H. Orrick

**REPLY IN SUPPORT OF MOTION FOR SANCTIONS UNDER RULE 11**

Fed. R. Civ. P. 11(c); Civil L.R. 7-3(c)

Hearing: October 14, 2026, 2:00 p.m.

By videoconference

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## 1 Introduction

Barnes & Thornburg LLP and Amy C. Poyer oppose this motion (ECF No. 16) ("Resp.") "[o]n their own behalf and as Attorneys for Specially [sic] Appearing Respondent Regents of the University of Michigan." Resp. at 7. The motion concerns two sentences in their Opposition to the withdrawal motion (ECF No. 6) ("Opp'n"), restated in its corrected copy (ECF No. 12-1) ("Corrected Opp'n"), each reporting what a document it cited says. The Response defends the first as "counsel's characterization of [the order's] legal effect," a "legal contention under Rule 11(b)(2)" on which "the result is the same under either provision," and the second as "what the Certificate recounts," in support of a "legal conclusion." Resp. at 4, 5. Each is pronounced nonfrivolous, and "[w]hich reading is right" is left to the withdrawal motion, where "[i]f the Court ultimately reads the order the Debtor's way, that will not make the Opposition's reading sanctionable when it was made." Resp. at 4–6.

Neither sentence had evidentiary support when it was signed: the order denies the motion for lack of jurisdiction; the certificate certifies two completed mailings. The Response now reads both exhibits as the motion does and defends the sentences anyway, the first as a "characterization," the second with a theory, newly raised in the Response, that Michigan's court rules direct service on the board to "the president, the secretary, or other member of the governing body," and that the general counsel is none of those. Resp. at 5–6. Whatever its merit, the theory disputes the sufficiency of the mailings; it does not make the Debtor "state[] that her original attempt at service . . . was unsuccessful." Opp'n at 2; Corrected Opp'n at 2.

## 2 Issues

First, whether a representation that a court "has exercised its discretion,"

citing an order that denies "for lack of jurisdiction" and says so twice, had evidentiary support when made. Second, whether a representation that, "[p]ursuant to [her] certificate of service," a party "states that her original attempt at service . . . was unsuccessful," citing a certificate that certifies two completed mailings, had evidentiary support when made, and what purpose it served on a point its author declared immaterial. Third, whether standing on both after service of this motion, and re-advocating both in opposition to it, is the conduct Rule 11(c)(2) leaves unprotected, and what sanction suffices to deter it.

## 3 The Response's Concessions

*Procedure.* Amy C. Poyer concedes that the motion was served on August 7, 2026, that the errata came "within the period Rule 11(c)(2) provides," and that the motion was filed on September 1, 2026, "directed to the two remaining statements." Resp. at 1. The Response makes no procedural objection and requests no fee under Rule 11(c)(2).

*The order.* "It denied the motion to alter or amend for lack of jurisdiction . . . ." Resp. at 4. "The Motion does not contend that the Opposition misquoted the July 13 Order, and it did not." Resp. at 3. Both true, and neither responsive: the motion contends that the Opposition misdescribed the order it quoted.

*The certificate.* It "certifies service by first-class mail . . . and it does; the Opposition did not say otherwise." Resp. at 5. The Response then reads the certificate as it is written: "the Debtor engaged a process-serving vendor on June 15, 2026, whose first assigned server 'did not complete the posting' and whose second 'failed to complete service,' and in the meantime she mailed the papers herself on June 18 and, through CaseMail, on June 23." Resp. at 5.

The sentence the motion challenges reads: "Pursuant to the Debtor's certificate of service, filed July 16, 2026, Debtor states that her original attempt at service through a third-party mailing service was unsuccessful." Opp'n at 2; Corrected Opp'n at 2. The "original attempt" was an engagement of Proof

Technology, Inc. (proofserve.com), on June 15, 2026, at its "Posting" speed ("Documents posted on door within 2 days of server accepting serve") with a first-class mail add-on. Its first process server, DeAnna Crout, "did not complete the posting within the 48-hour window"; its "Proof Specialist," Breah Coleman, then advised that the documents "cannot be posted and must be personally served" and offered "Standard Service" at $121, "Expedited Service" at $228, or "Same-Day Service" at $281; its second process server, Adaobi Ezeokonkwo, "also failed to complete service and was redispatched . . . for 'no attempts.'" The Debtor "canceled the serve." Ex. I at 1–2 (ECF No. 7-1 at 220–21).[1] What the certificate certifies is the mail: the Debtor's own, from the Ann Arbor post office on June 18, 2026, "USPS receipt time 09:12 AM," and CaseMail's on June 23, 2026, with the "USPS scan confirmation" attached. Ex. I at 1–3 (ECF No. 7-1 at 220–22). In the Opposition the sentence follows "The Debtor failed to effectuate proper service" and is cast as what the "Debtor states." Opp'n at 2; Corrected Opp'n at 2. So placed, it turned the certificate's account of a vendor's failure, recounted there as the prelude to the mailings, into the Debtor's own concession of the failure the sentence was cited to prove.

The Response's paragraph at page 5 is the correction. It arrives in a brief opposing sanctions for the sentence it corrects, unacknowledged as one.

## 4 The Standard Under Rule 11(b)(3)

By presenting a paper, an attorney certifies that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). What a court did, and what a certificate of service states, are facts, and the documents are the evidence. Amy C.

[1]The exhibits are the ones the University of Michigan attached to its Request for Judicial Notice as a single 256-page filing, ECF No. 7-1. They are cited by exhibit letter and the exhibit's own page, with the ECF page of that filing in parentheses: Exhibit B, the sanctions motion, begins at ECF page 11; Exhibit C, the order dismissing the case, at 51; Exhibit H, the July 13, 2026 order, at 215; Exhibit I, the certificate of service, at 220. The briefs are cited by their own page numbers: the Opposition (ECF No. 6), its corrected copy (ECF No. 12-1), the motion (ECF No. 13), and the Response (ECF No. 16).

Poyer agrees: "The facts about the order are its words." Resp. at 4. The facts about the certificate are its words too. A sentence that reports those words wrongly, with a citation to the exhibit as its support, is a factual contention without evidentiary support, and a misleading one: the citation vouches for a report the exhibit contradicts. The Rule holds legal contentions to a separate and more lenient standard, "warranted by existing law or by a nonfrivolous argument," *id.* 11(b)(2), and the leniency is for the argument, not for the facts asserted on the way to it. A report of what a document says does not become a legal contention because a legal question can be asked about the document, any more than a misquotation of a contract becomes a theory of contract law.

The Response's lead case, *Lake v. Gates*, No. 23-16022 (9th Cir. Mar. 14, 2025) (published at 130 F.4th 1064), affirmed sanctions under Rule 11 and 28 U.S.C. § 1927 against lawyers whose complaint made "false, misleading, and unsupported factual assertions" about a voting system. Slip op. at 5. The panel asked what "[a] reasonable person reading" the paper "would believe," and found the paper sanctionable because the reader would believe something "contrary to the facts." *Id.* at 10.[2]

In *Lake* the true facts were "widely available," so the incorrect ones admitted only two explanations, and Rule 11 accepts neither: the lawyers "either failed to conduct the reasonable and factual legal inquiry required under Rule 11, or they conducted such an inquiry and filed this lawsuit anyway." *Lake*, slip op. at 11 (quoting the district court). When the exhibit filed with the sentence contradicts the sentence, "[e]ven the most cursory" inquiry "would have revealed" the contradiction. *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005).

---

[2]The Response cites the same passage for the proposition that "no reader of the Opposition could be misled about what the order says" because the order was attached. Resp. at 4. That was the dissent's position in *Lake*: "no party to the litigation was fooled," and the complaint, "[r]ead in context," "never asserted that Arizona did not use paper ballots"; the district court had "cherry-picked isolated snippets." Slip op. at 14–15, 17 (Bumatay, J., dissenting). The panel divided over what the complaint said; the Response has conceded what these documents say. Resp. at 4, 5.

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986), and *In re Carraher*, 971 F.2d 327 (9th Cir. 1992) (per curiam), on which the Response rests,[3] concern legal argument, and the en banc court has said so of the first: "The court was dealing with legal arguments, not with allegations or claims." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1990) (en banc). With admonitions against misstatements and "omission of critical facts," *Golden Eagle* had "no quarrel." 801 F.2d at 1539.

**5 The July 13 Order**

*Carraher* holds that bankruptcy courts "are not automatically divested of jurisdiction over related cases when the underlying bankruptcy case is dismissed," that such a court "may retain the case" after weighing "economy, convenience, fairness and comity," and that the weighing is reviewed for abuse of discretion. 971 F.2d at 328.[4]

Exhibit H contains no weighing. It contains a premise and a conclusion of law, the conclusion stated twice. The premise: "Under controlling law of the circuit, a trial court lacks authority to alter the status quo established by an order that is the subject of a pending appeal [sic]." The conclusion: "This Court is persuaded that it should deny the Motion for lack of jurisdiction," and, of the filings after dismissal, "As an initial matter, for all the reasons recited above, this Court

[3] The sanctions *Golden Eagle* reversed had been imposed because a brief had not labeled its argument one for the extension of existing law and had not cited adverse cases; the court would not police "the level of assurance used by the brief-writer" in stating the law. 801 F.2d at 1539–40 (quoting the appellant's brief). The district court's decision had "caused complete consternation in the practicing bar which sees vigorous advocacy, seemingly without regard to its possible misrepresentations to the court, as the hallmark of aggressive and justified representation of the client." *Id.* at 1540 n.4 (quoting the ABA Section of Litigation). *Carraher* reversed sanctions on a jurisdictional argument that "was previously undecided in this circuit and has logical appeal." 971 F.2d at 328. What page 2 of Exhibit H says is not previously undecided, and reading it requires no logical appeal.

[4] The review asks whether the appellate court has "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors," 971 F.2d at 328 (quoting *United States v. City of Twin Falls*, 806 F.2d 862, 868 (9th Cir. 1986)), a standard that presupposes a weighing to review. *Carraher*'s own bankruptcy court had weighed the factors, and the panel took them in turn: efficiency and convenience, fairness, comity. *Id.*

similarly lacks the jurisdiction to entertain any motions filed post dismissal. . . . Accordingly, the Court declines to entertain any further requests for relief in this matter." Ex. H at 1–2 (ECF No. 7-1 at 215–16). Whether the order has any legal basis is not this motion's question. A court that holds it has no power to act is not choosing whether to act.

The Response's formulation concedes the point: the court "in substance, elected not to retain the matter . . . whatever vocabulary the order used." Resp. at 4. The vocabulary is "lacks the jurisdiction." A characterization that holds "whatever vocabulary the order used" does not depend on the order's wording, and the citation to Exhibit H beneath it was therefore never its source.

The closing sentence is introduced by "Accordingly," declines "further" requests, and closes a paragraph about "motions filed post dismissal." Ex. H at 2 (ECF No. 7-1 at 216).[5] The sanctions motion was filed June 15, 2026, before the June 23, 2026 dismissal (Ex. B at 1 (ECF No. 7-1 at 11); Ex. C at 1 (ECF No. 7-1 at 51)); the order mentions it nowhere, and an order that never mentions a matter records no weighing of whether to retain it. The Opposition read the paragraph the same way, reciting that the order "addressed the Debtor's post-dismissal filings directly." Opp'n at 2.

The Opposition states the contention twice, the second time with the record citation: "Here, the bankruptcy court has exercised that discretion: it declined to entertain further proceedings in the dismissed case. (RJN, Ex. H, at 2.)" Opp'n at 1, 4.[6] That is the version that reports the exhibit rather than "characteriz[ing]" it.

The sentence is the first of the Opposition's "[t]hree independent grounds": "First, there is nothing to withdraw." Opp'n at 1. The ground exists only if the

[5]The Response's fallback is that the closing sentence "is not limited by its terms to post-dismissal filings." Resp. at 4. Its terms are quoted above. The order did not change between the two briefs; Amy C. Poyer's reading of it did.

[6]The Response says the challenged statements are "quoted here in full." Resp. at 1. It quotes the page 1 version, adds a "see" cite to pages 3–4 and quotes nothing from them, and omits the page 4 version. Resp. at 2.

bankruptcy court decided something. The order says it could not.

## 6 The Certificate of Service

The sentence and the certificate are set out side by side in the motion (Mot. (ECF No. 13) at 5–6). The Response does not defend the sentence as a report of the certificate. In the sentence's place it asks "[w]hether those mailings effected proper service of a contested motion on the Regents of the University of Michigan," which it calls "a legal question." Resp. at 5.[7]

A challenge to the sufficiency of the mailings, if the University of Michigan had one, was a ground to argue in the Opposition; it would not have made the Debtor "state[] that her original attempt at service . . . was unsuccessful." Opp'n at 2; Corrected Opp'n at 2. And it had none. Rules 9014(b)(1) and 7004(b)(6), and the rule that Michigan's so-called courts of general jurisdiction apply to their own summonses (Mich. Ct. R. 2.105(G)(7)), appear nowhere in the Opposition or in its corrected copy. Opp'n at 2; Corrected Opp'n at 2. The sentence rested on the certificate and the order alone.

Rule 11 measures a paper by "what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Golden Eagle*, 801 F.2d at 1537 (quoting the 1983 advisory committee note). A theory constructed after service of a Rule 11 motion is not what was reasonable to believe when the sentence was signed; advancing it now is a further presentation of the sentence, "by . . . later advocating it," under the same certification. Fed. R. Civ. P. 11(b).

In any event, the University of Michigan's home-rule theory of service of process (Resp. at 5–6) has no place in the constitutional order. The Federal Rules answer the question in dispute, and they answer it three subdivisions above the one the Response quotes. A contested motion is served "in the manner for serving

---

[7] The Response offers the theory as "at the least, a nonfrivolous one" and, two sentences later, advises that "[t]he Court need not resolve that question here." Resp. at 6. It cites its lead case for the rule that "[a] supported contention does not insulate an unsupported one." Resp. at 6 (citing *Lake*, 130 F.4th at 1068).

a summons and complaint provided by Rule 7004." Fed. R. Bankr. P. 9014(b)(1). Rule 7004(b) then lists ten classes of defendant, and introduces all ten as methods available "in addition to the methods of service authorized by Fed. R. Civ. P. 4(e)–(j)." Fed. R. Bankr. P. 7004(b).[8] Subdivision (b)(3) provides for service by first-class mail on "a domestic or foreign corporation" by "mailing the copy . . . to an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service." Other lists enter the Rule as additions: Michigan's, through subdivision (b)(7), under which mail to whoever state law designates "also suffices," and the board's own appointments, through subdivision (b)(8). Neither shortens the list in subdivision (b)(3), whatever Michigan thinks of its own rule.[9]

---

[8]Among those methods is Fed. R. Civ. P. 4(h)(1)(B), which reaches the same officers by delivery: "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."

[9]Where a Federal Rule answers the question in dispute, "a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test." *Berk v. Choy*, 607 U.S. ___, slip op. at 4 (Jan. 20, 2026). The Rules of Decision Act sends a federal court to state substantive law except where the Constitution, a treaty, or a statute "otherwise require[s] or provide[s]"; the Rules Enabling Act "provides for the application of federal law"; so "when a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether." *Id.* at 3–4 (quoting 28 U.S.C. § 1652). The Bankruptcy Rules have an enabling act of their own, 28 U.S.C. § 2075, which authorizes general rules of "the practice and procedure in cases under title 11" under the same limit as § 2072(b): "[s]uch rules shall not abridge, enlarge, or modify any substantive right." Validity asks only whether the Rule "really regulates procedure," *Berk*, slip op. at 10 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)); the Court has "rejected every statutory challenge to a Federal Rule that has come before" it, *id.* (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (plurality opinion)), and the Rules so sustained include Rule 4(f), service of process, and Rule 11, "sanctions for signing court papers without reasonably investigating the facts asserted." *Id.* at 10–11. The Supreme Court's first case of a Federal Rule "in direct collision with the law of the relevant State" concerned service of process: Massachusetts required that "the writ in such action has been served by delivery in hand upon such executor," the Federal Rule said, "implicitly, but with unmistakable clarity," that in-hand service was not required, and the Rule was "the standard against which the District Court should have measured the adequacy of the service." *Hanna v. Plumer*, 380 U.S. 460, 462, 464, 470, 472 (1965) (quoting Mass. Gen. Laws Ann. ch. 197, § 9 (1958)). To hold that a Rule "must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Id.* at 473–74. "The *Erie* rule has never been invoked to void a Federal Rule." *Id.* at 470. "One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules." *Id.* at 472 (quoting *Lumbermen's Mut. Cas. Co. v. Wright*, 322 F.2d 759, 764 (5th Cir. 1963)). A reading of the Enabling Act that let state law prevail wherever it was bound up with a state right "would allow States to force a wide array of parochial procedures on federal courts." *Shady Grove*, 559 U.S. at 413 n.11 (opinion of

The Regents of the University of Michigan, as Michigan styles its board, are a corporation: the regents "shall constitute a body corporate known as the Regents of the University of Michigan," an eight-member board with "general supervision of its institution." Mich. Const. art. VIII, § 5. The very "subrule" the Response quotes[10] calls its board "a corporate body." Mich. Ct. R. 2.105(G)(7).

The University of Michigan's bylaws, which the board writes for itself, assign the title "The Vice President and General Counsel" to the officer who "will conduct the legal affairs of and provide legal advice and representation for the university." Regents of the Univ. of Mich., Bylaws § 2.12, https://web.archive.org/web/20260915220720/https://regents.umich.edu/governance/bylaws/bylaws-chapter-02/.[11] The June 18, 2026 mailing was addressed to the "Office of the Vice President and General Counsel of the Regents of the University of Michigan"; the June 23, 2026 mailing to the "Vice President & General Counsel"

Scalia, J.). Calling Michigan's list "the law of the state where service is made" does not "magically dispel the conflict," *Berk*, slip op. at 8; a theory that cannot be fitted into Rule 7004 without deleting subdivision (b)(3) and subdivision (i) with it "illustrates that it has no place there." *Id.* at 9. And the words that admit Michigan's list at all are a statute's: the opening words of Rule 7004(b), through "in addition," were enacted by Congress. Pub. L. No. 103–394, § 114(1), 108 Stat. 4106, 4118 (1994).

[10]The Response's excursion into what Michigan calls its Court Rules stops at paragraph (G)(7) of Rule 2.105. The subrule continues: "The service of process may be made on an officer having substantially the same duties as those named or described above, irrespective of title. In any case, service may be made by serving a summons and a copy of the complaint on a person in charge of the office of an officer on whom service may be made and sending a summons and a copy of the complaint by registered mail addressed to the officer at his or her office." Mich. Ct. R. 2.105(G). A brief that quotes one paragraph of a subrule and omits the paragraph that closes it, in opposition to a motion for quoting exhibits selectively, has made the motion's point. Nor is the list the whole of Michigan's answer: subrule (I)(1) of the same "Court Rule" adds "an agent authorized by written appointment or by law to receive service of process."

[11]The same chapter makes that officer one of the University of Michigan's executive officers, "[t]he president, the chancellors of the university at Dearborn and at Flint, and the vice presidents," and, "[t]o maintain clarity and distinction between roles," forbids any other vice president to "bear the same full title as an executive officer vice president." Bylaws § 2.01. The office also "will contract for and manage outside legal services." § 2.12. The Response's position is that Michigan's rule names "the president, the secretary, or other member of the governing body," and that the mailings went to the general counsel, "not to any of those persons." Resp. at 5–6. Subdivision (b)(8) suffices for "any defendant" by mail to "the defendant's agent" who "is authorized by appointment or by law to accept service," where "the agent regularly conducts a business or profession"; the Vice President and General Counsel holds office "by appointment by the board," Bylaws § 2.14, and the appointment is to "conduct the legal affairs of" the University of Michigan, § 2.12.

of the "Regents of the University of Michigan." Ex. I at 1–2 (ECF No. 7-1 at 220–21).[12] Mail directed to an officer by title is service under the Rule's terms: the officer "need not be correctly named in the address—or even be named—if the envelope is addressed to the defendant's proper address and directed to the attention of the officer's or agent's position or title." Fed. R. Bankr. P. 7004(i).

## 7 The "Minor" Defense

The Response's remaining defense of the service sentence is that it was "a minor or insignificant allegation," on "a point the brief itself declined to rest on." Resp. at 6. The second clause is the offense. Either the sentence was a ground, in which case it was a factual contention presented without evidentiary support, or it was not, in which case it served no purpose but to describe the Debtor to the Court, falsely, on a point the brief itself declared immaterial. The Opposition chose the second in the sentence that followed: service "is not the ground on which this opposition rests," and the motion "would fail" regardless. Opp'n at 2.

Although Rule 11 "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy,"[13] "any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The concern is for advocacy, and Amy C. Poyer maintains that the sentence advanced none.

---

[12] The subdivision through which the Response reaches Michigan law at all, Rule 7004(b)(6)(A), runs to "the person or office" that state law designates; the certificate names the office twice, and the Opposition itself identifies it by that title, reciting that the Debtor's adversary proceeding runs "against the University's Vice President and General Counsel in his official capacity." Opp'n at 3.

[13] The Rule "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," Fed. R. Civ. P. 11 advisory committee's notes to 1983 amendment; the requirement *Golden Eagle* rejected "tends to create a conflict between the lawyer's duty zealously to represent his client" and "the lawyer's own interest in avoiding rebuke," 801 F.2d at 1540; the award reversed in *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988), "would imply that attorneys in general should exercise little, if any, creativity in their representation of clients," *id.* at 1344; and the en banc court feared that attorneys "might turn down cases on behalf of individuals seeking to have the courts recognize new rights" or "refuse to represent persons whose rights have been violated but whose claims are not likely to produce large damage awards." *Townsend*, 929 F.2d at 1363.

The sentence concerned the Debtor's conduct of her own case: whether she had served her motion. The Eleventh Circuit affirmed a censure for filings whose remarks about opposing counsel "serve[d] no purpose other than to harass and intimidate opposing counsel," under a standard that forbids submissions that "disparage the intelligence, ethics, morals, integrity or personal behavior of another lawyer or his/her client, unless such matters are directly and necessarily in issue." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1322 (11th Cir. 2002) (per curiam). Amy C. Poyer declared the matter not in issue.

*Townsend*, which the Response cites for "relevant factor," is the en banc decision that refused a "'safe harbor' for improper or unwarranted allegations," because under such a rule "a party that has one non-frivolous claim may pile on frivolous allegations without a significant fear of sanctions." 929 F.2d at 1363. The relation of a contention to the whole is "a relevant factor, but the mere existence of one non-frivolous claim is not dispositive." *Id.* at 1364. The footnote the Response quotes speaks of an "allegation or subclaim" in a pleading. *Id.* at 1365 n.4. A false statement about the opposing party in the Background of a brief is not a subclaim.

Purpose is judged objectively, and "[e]ither the improper purpose or frivolousness ground is sufficient to sustain a sanction." *Id.* at 1362. A court "confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose." *Id.* at 1365.

The sentence sits among the Opposition's characterizations of the Debtor: a "wave of further papers" (Opp'n at 2); a response "to multiply proceedings" (*id.* at 3); "serial forum selection" (*id.* at 7). It told this Court that, "[p]ursuant to" a *pro se* party's own certificate of service, she "states that her original attempt at service . . . was unsuccessful." Opp'n at 2. The certificate certifies two completed mailings. That is why the violation is not "inconsequential." Resp. at 6 (quoting Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment).

Submissions to a court "serve as a vehicle for the articulation of specific facts

that support a particular position relevant to a case,"[14] and an attorney "cannot 'file first and think later.'" *Tenneco*, 293 F.3d at 1325, 1327 (quoting *In re TCI Ltd.*, 769 F.2d 441, 442 (7th Cir. 1985)).

## 8 The Safe Harbor

A paper is presented "by signing, filing, submitting, or later advocating it," Fed. R. Civ. P. 11(b), and the motion may be filed unless the challenged contention "is withdrawn or appropriately corrected within 21 days after service," *id.* 11(c)(2). A contention that lacked evidentiary support when signed did not become untenable later;[15] it was untenable when made, and advocating it again after notice is a second presentation on the same certification.

Served with the motion, Amy C. Poyer corrected a third sentence and kept these two. ECF Nos. 12, 12-1. The Response re-advocates both. Resp. at 4–5.

---

[14] The State Bar Act, which this Court's local rules adopt, makes it the duty of an attorney "never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law," Cal. Bus. & Prof. Code § 6068(d), and "[t]o advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he or she is charged," *id.* § 6068(f); the Opposition, in the sentence that followed, disclaimed the fact as a ground. Opp'n at 2. Every attorney practicing here must "[b]e familiar and comply with the standards of professional conduct required of members of the State Bar of California" and "[p]ractice with the honesty, care, and decorum required for the fair and efficient administration of justice." Civil L.R. 11-4(a)(1), (4). Those standards "are contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto," *id.* cmt., and the rule "provides authority to sanction behavior that breaches" them. *Cakebread v. Berkeley Millwork & Furniture Co.*, 218 F. Supp. 3d 1040, 1044 (N.D. Cal. 2016); see *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996) ("an attorney admitted to a particular bar may be disciplined for conduct that violates that bar's local rules of professional conduct"). Section 6068(d) "addresses a California attorney's duty of candor toward the court." *Cakebread*, 218 F. Supp. 3d at 1045. *Wunsch* held the "offensive personality" clause that § 6068(f) then contained unconstitutionally vague, 84 F.3d at 1119–20; the clause quoted here was not before the court, and the words *Wunsch* struck no longer appear in the statute. The Rules of Professional Conduct add that a lawyer shall not "fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer," Cal. R. Prof. Conduct 3.3(a)(1), or "engage in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation," *id.* 8.4(c).

[15] The Response's answer is that "[t]he Rule does not require a party to withdraw contentions that remain warranted, and standing on them is not a violation," and that the committee note the motion quotes "presupposes that the position has become untenable," which "neither remaining statement has." Resp. at 6. The argument assumes its conclusion. The note the Response quotes says the same: the safe harbor protects a party that withdraws a position "or . . . acknowledge[s] candidly that it does not currently have evidence to support a specified allegation," and a litigant's obligations "include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment.

*Holgate*, which the Response cites for the errata, is this motion's structure exactly: the error "remedied . . . through errata . . . within the 21-day safe harbor period" was not sanctioned, 425 F.3d at 680, and the paper its signer "had ample ability and opportunity" to withdraw or correct, and did not, was. *Id.* at 678.[16]

"A lawyer should not be able to proceed with impunity in real or feigned ignorance of authorities which render his argument meritless." *Golden Eagle*, 801 F.2d at 1542. The same holds of a lawyer who proceeds in ignorance, real or feigned, of the exhibit filed under the sentence. "Ensuring that attorneys do not abuse the court process by filing misleading and false claims is a legitimate function of Rule 11 . . . ." *Lake*, slip op. at 12.

## 9 The Sanction

Proportion is the sanction's business, not the violation's. The Response invokes "extreme caution" about an "extraordinary remedy" (Resp. at 3)[17] and names no sanction it would call excessive. The motion asks for an admonition and a penalty in whatever amount the Court finds "sufficient to deter," which is the measure Rule 11(c)(4) sets. Mot. at 2, 7. The Response's lead case affirmed $122,200. *Lake*, slip op. at 5–6.

Caution about the sanction is not immunity for the violation. In *Holgate* the district court imposed $12,000 of the more than $100,000 sought as the amount "sufficient to deter," and the Ninth Circuit, affirming $8,000 of it, remanded only to ask whether that sum "is sufficient to deter Levinson or others like him." 425

[16] *Townsend* has the same structure: after affidavits showed the allegations against the opposing party's lawyers baseless, the lawyer filed an amended complaint "still alleging" them and "conducted absolutely no inquiry before filing that complaint," from which the district court permissibly inferred that "the naming of Wilson was essentially vindictive." 929 F.2d at 1366.

[17] The "extreme caution" closes an opinion that reversed a $10,000 award of the opponent's expenses and attorney's fees against claims the court held "not frivolous in any respect" but "meritorious," reversed the judgment on the merits with it, and observed that the court had been reversing sanctions "even in cases in which the party against whom sanctions were imposed prevailed on appeal." *Operating Eng'rs*, 859 F.2d at 1343, 1345. The opinion is from 1988, under a Rule that provided that the court "shall impose" a sanction for a violation and had no safe harbor. Fed. R. Civ. P. 11 (1983) (amended 1993), quoted in full in *Cooter*, 496 U.S. at 391–92; see Fed. R. Civ. P. 11(c)(1) ("may impose"), (c)(2).

F.3d at 680.

Nor does the client lower the standard. *Lake* held that a subject "of national concern only increases the importance of Rule 11′s deterrent function," slip op. at 12; a lawyer who signs for the University of Michigan certifies what every other signer certifies, under a Rule the Supreme Court reaffirmed this Term as the one providing "sanctions for signing court papers without reasonably investigating the facts asserted." *Berk*, slip op. at 11.

**10 The "Reservation"**

The Response closes by reserving "any right, defense, or immunity the University has reserved." Resp. at 7.[18] The motion runs against Barnes & Thornburg LLP and Amy C. Poyer. Whatever the University of Michigan may reserve,[19] it cannot reserve for its lawyers a privilege to misdescribe the record

---

[18]The reservation recurs across the University of Michigan's filings in this Court, each time "specially," under what it styles a "special and limited" appearance. Opp'n at 1, 8; ECF No. 12 at 1; Corrected Opp'n at 1, 8; Resp. at 7. The Federal Rules retired the adverb in 1938. A defendant that doubts the court's power over it says so in a motion or an answer, Fed. R. Civ. P. 12(b), and may argue the merits in the same paper "without sacrificing" the objection; the Ninth Circuit, shown a special appearance in 1986, "cannot understand why" counsel made one. *SEC v. Wencke*, 783 F.2d 829, 832–33 n.3 (9th Cir. 1986) (Rule 12 "abolished the distinction between general and special appearances when the Federal Rules were adopted in 1938"; "Special appearances to challenge jurisdiction are no longer required in federal courts." (quoting *Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 165 (9th Cir. 1975))); *Wright v. Yackley*, 459 F.2d 287, 291 & n.9 (9th Cir. 1972) (Rule 12 "has abolished the formal distinction between general and special appearances"; the form of an appearance is "a clearly procedural matter," governed by the Federal Rules and not by state law). Two more Barnes & Thornburg lawyers, Robert C. Folland of the Ohio bar and Lisa Starks of the Indiana bar, have applied for admission *pro hac vice* to represent the Regents of the University of Michigan, each naming Amy C. Poyer as local co-counsel. ECF No. 14 at 1; ECF No. 15 at 1. The applications are docketed as motions "for leave to appear," filed by "Regents of the University of Michigan." ECF Nos. 14, 15 (docket text). The lawyers now sign "[o]n their own behalf"; the client, in the same signature block, remains the "Specially [sic] Appearing Respondent," and the Response itself is docketed as filed by "Regents of the University of Michigan." Resp. at 7; ECF No. 16 (docket text). The self-styled sovereign is an eight-member board that runs a school in Ann Arbor. Mich. Const. art. VIII, § 5.

[19]Sovereign immunity "is 'personal' to the State itself" and "does not extend to 'lesser entities,'" and whether a state-created entity is the State "is a question of federal law." *Galette v. New Jersey Transit Corp.*, 607 U.S. ___, slip op. at 6 (Mar. 4, 2026). Michigan made its university "a body corporate," Mich. Const. art. VIII, § 5, "a term traditionally understood to create a '[s]eparate legal personality,'" *Galette*, slip op. at 22–23; a unanimous Court "has never once found a corporation that was liable for its own judgments to be an arm of the State," *id.* at 13, and reads *Hopkins v. Clemson Agric. Coll.*, 221 U.S. 636 (1911), as holding a state college "not an arm of the State" because it "was instead a corporation that 'might sue and be sued, plead and be impleaded, in its corporate name.'" *Galette*, slip op. at 14–15 (quoting *Hopkins*, 221 U.S. at 646). "Sovereigns

to a federal court. Rule 11(c)(1) reaches "any attorney, law firm, or party that violated the rule or is responsible for the violation," and, "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1).

## 11 Conclusion

The motion should be granted. Barnes & Thornburg LLP and Amy C. Poyer should be admonished to conform representations about record documents to the documents themselves and directed to pay into the registry of the Court a penalty in the amount that "suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(1), (c)(4).

Dated: September 19, 2026 Respectfully submitted,

/s/ Nadja Yang

Nadja Yang, Debtor and Movant *pro se*

`Assisted-by: Claude Fable 5.1 via Claude Code`

have dignity; corporations do not." Brief of Professors William Baude and Stephen E. Sachs as Amici Curiae in Support of Cedric Galette and Jeffrey Colt et al. at 9, *Galette*, Nos. 24-1021 & 24-1113 (U.S. Nov. 19, 2025), https://www.supremecourt.gov/DocketPDF/24/24-1021/385149/20251119135338068_24-1021_24-1113_Amicus%20Brief.pdf.